The Law Offices of Alexandre Turner, LLC
By:    Alexandre Turner, Pa. I.D. 92568
alex@turnerlawofficesllc.com
1500 Walnut Street, 7th Floor West
Philadelphia, Pennsylvania 19102
Telephone: (267) 225-6628
Facsimile: (215) 751-0658

Attorney for Defendant John Frances Griffin

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 22-465 |
| JOHN FRANCES GRIFFIN | : |

**DEFENDANT'S TRIAL MEMORANDUM**

**INTRODUCTION**

Defendant John Frances Griffin, by his undersigned attorney, hereby submits this trial memorandum for trial scheduled to commence on February 10, 2025. Mr. Griffin anticipates that with defense testimony the trial will last approximately two weeks.

**FACTS**

Mr. Griffin intends to present evidence of the following at trial:

Griffin, along with his wife Monica Caraffa, founded an urban farm company, Second Story Farming (SSF), in 2014. Caraffa was the sole shareholder and held full financial responsibility for the company. Initially the couple funded the company by

taking on personal debt and lending money to the company, and using their personal funds to operate the company as the company initially did not have a checking account. They memorialized the money lent to the company, and the company's obligation to pay back the loans to them, in agreements and corporate meeting minutes. This initial funding by Griffin and Caraffa was used, *inter alia*, to begin work on obligations towards the two SSF customers/partners at issue: Swanson Farms ("Swanson") and Reed Next ("Reed"). Both had contracted with SSF for the manufacturer and installation of an urban farm on property that they (Swanson and Reed) owned and controlled. After August of 2015 Griffin and Caraffa began to attract some investors to SSF but were still mostly funding the company themselves.

Although SSF and Swanson signed an operating agreement on July 6, 2017, following Swanson's first payment on May 15, 2017, they had already been subject to a partnership agreement since September of 2016 and SSF had already performed significant work for Swanson prior to Swanson's first payment. This work was paid for with money lent by Griffin and Caraffa to the company, with the understanding, memorialized in agreements and corporate documents, that the company would pay the lent money back. Performance on the Swanson contract was hindered by the fact that Swanson had a contractual obligation to make their site ready before installation could begin, and the site was never made ready. Eventually Swanson barred SSF from their site making performance impossible.

Reed also began its relationship with SSF in 2016 and formalized that relationship with a purchase agreement in 2017. Reed also had to provide a site ready for installation, but did not possess a site at the time the parties entered into their

agreement. Although SSF was ultimately not able to install an urban farm for Reed, it was able to provide Reed with inventory that settled its obligation to Reed's satisfaction.

During 2017, SSF spent significant funds on raw materials, components, supplies, tooling, and labor to manufacture proprietary modular growing towers for the Swanson and Reed contracts, notwithstanding that there were no ready sites to install same. SSF also transferred funds from its now-opened corporate account back to the accounts that were initially used to fund the company to cover expenses that continued to be paid out of the funding accounts and personal revolving credit, and payments on the personal loans that the couple had made to the company.

In 2018 the company collapsed because of civil litigation, described *infra*, and as a result could not have performed on the contracts it had with Swanson and Reed even if either of them had provided a suitable site ready for installation. In 2017, SSF's corporate counsel, Henri Marcial, came to suspect that SSF's accountant, Arthur McHenry, was committing fraud and otherwise acting adversarial to the company. SSF sued McHenry for fraud and other claims in January of 2018. McHenry, who had cultivated relationships with SSF's investors, countersued SSF with said investors. Attorney Marcial informed Swanson of the issues with McHenry in good faith; Swanson subsequently filed suit against SSF seeking a return of their payments even as they barred SFF from installing the manufactured towers at their site. The litigation was settled by agreement and although Reed was a party to that settlement, Swanson was not. Swanson's contract with SSF contained a binding arbitration clause but Swanson declined to arbitrate.

McHenry had been hired by SSF as their CPA in 2016. Prior to that date Caraffa had full financial responsibility for the nascent company. McHenry served as the custodian for all of SSF's records. Griffin personally and repeatedly urged McHenry to file tax returns but McHenry failed to do so. Griffin did not receive a salary from SSF. However, significant funds were transferred from SSF's accounts back to the funding accounts in the form of loan payments and business expense reimbursements. SSF corporate documents make clear that Griffin intended to pay taxes on these funds should they be considered income by the IRS. However, McHenry continued to ignore his obligations to file or even verify Griffin's tax status, using his time instead to try to gain control of the company.

After their relationship with McHenry became adversarial, Griffin and Caraffa attempted themselves to gather their business records so that they could file taxes. They were frustrated by two obstacles. First, McHenry continued to hold all the company's records and continues to this day to refuse to return company computers that he removed from SSF's worksite. Second, in 2020 Griffin became gravely ill and continues to suffer debilitating health conditions.

## EVIDENCE

### I. Witnesses

Mr. Griffin expects to call: Monica Caraffa, principle of SSF and Griffin's wife, and Henri Marcial, corporate counsel to SSF. Mr. Griffin will also likely testify himself. Additionally, Mr. Griffin anticipates calling a forensic accountant from CBIZ Forensic Consulting Services, LLC to testify as an expert witness.

**II.     Exhibits**

Mr. Griffin anticipates that he will seek to introduce the following types of records into evidence:

• Corporate documents, including meeting minutes and agreements between the corporation and Griffin and Caraffa personally, memorializing the corporation's agreement to repay the money leant to the coropration by Griffin and Caraffa and it's agreement to pay business expenses.

• Documents and records regarding the funding of the company, including such documents that evidence the transfer of funds from Griffin and Caraffa to the corporation constituting the loans that initially funded the company, and evidence of payments made on behalf of the company from funding accounts that also represented debt owed by the company to Griffin and Caraffa personally.

• Records and receipts evidencing the expenditure of funds on the raw materials, components, supplies, tooling, and labor to manufacture proprietary modular growing towers for the Swanson and Reed.

• Thousands of photographs documenting the manufacture of said growing towers for Swanson and Reed and otherwise demonstrating performance on SSF's contracts/partnerships with Swanson and Reed.

• Correspondence between SSF and the parties as well as SSF and its CPA Arthur McHenry regarding the filing of taxes.

Mr. Griffin anticipates that the documents he expects to rely upon will be voluminous. Indeed, Mr. Griffin anticipates addressing one-by-one the hundreds of transactions that the Government has identified as suspect with records that explain

each transaction's legitimacy. He may also seek to introduce summary evidence pursuant to Federal Rule of Evidence 1006. Mr. Griffin has no objection to the Government relying on same. Mr. Griffin will stipulate to the authenticity of business records pursuant to Fed. R. Evid. 803(6) and 902(11).

### III.   Evidentiary Issues

#### A.   Availability of Defense Documents/Exhibits/Reciprocal Discovery

The most pressing trial issue for Mr. Griffin is that he has not finished locating identifying and producing to his counsel documents relevant to his defense. Although Mr. Griffin has identified the categories of documents he anticipates producing, he has not been medically well enough to locate and identify them. Production has been frustrated by the obstacles identified *supra*: 1) most of the business records were in the possession of McHenry and 2) Mr. Griffin has been effectively incapacitated since becoming very ill in 2020. Mr. Griffin is the only person who has the knowledge to locate and identify relevant documents: he cannot be effectively assisted in this effort and his ability to complete this task continues to be significantly hindered by his health issues. To date, Counsel has not received business records from Mr. Griffin other than the corporate minutes and agreements identified in the fist bullet under "Exhibits" *supra* and a number of photographs. These have been produced to the Government. Counsel continues to hope Mr. Griffin will be well enough to soon produce the remainder of the documents, which constitute the great bulk of the production, likely thousands of records. Mr Griffin estimates that he is half way through locating and identifying the records in question. He intends to bring what documents he can to the

pre-trial conference to pass same to defense counsel who will produce same to the Government after review.

Notwithstanding Mr. Griffin's ability to produce the documents upon which his defense relies before trial next month, which is limited, the Government would be left with little or no time to properly authenticate or investigate or even review the documents. Mr Griffin understands and respects the Court's scheduling order and ruling on his last motion for a continuance. Nonetheless Counsel cannot in good faith represent that the defense is ready for trial.

### B. Admissibility of Medical Records

Mr. Griffin agrees with the Government that he does appear to be in poor health and is indeed in poor health. He does not intend to seek to admit any evidence as to his poor health to gather sympathy or pander to the passions of the jury. Nonetheless, his poor health is relevant to his failure to file taxes and he will seek to admit evidence of it.

### IV. Other Trial Issues

Since the Government filed their Trial Memorandum, Mr. Griffin has produced some reciprocal discovery. However, most of the documentary evidence on which Mr. Griffin's defense relies remains un-produced as it has not yet been provided by Mr. Griffin to counsel for the reasons provided above and in Mr. Griffin's prior motions for trial continuances. Mr. Griffin appreciates the need for the Government to review said documents prior to trial.

## CONCLUSION

Mr. Griffin has access to documents, records, photographs, receipts, correspondence, and agreements that demonstrate that he neither had an intent to defraud Swanson and Reed nor made a willful affirmative attempt to evade paying income taxes. His ability to produce said evidence to counsel and the Government has been hindered by the grave state of his health and by no fault of his own. Mr. Griffin has a right to present a defense, and the Government, having requested reciprocal discovery, is entitled to review those documents that underlie Mr. Griffin's defense. Consequentially, in order to provide sufficient time for same, Mr. Griffin hereby renews his request for a continuance.

Respectfully submitted,

Dated: January 14, 2025

_____
Alexandre N. Turner
alex@turnerlawofficesllc.com
1500 Walnut Street, 7th Floor
Philadelphia, Pennsylvania 19102
Telephone: (267) 225-6628
Facsimile: (215) 751-0658

Attorney for Defendant, John Frances Griffin

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of January 2025, I have caused a true and correct copy of the foregoing Memorandum to be served on the following counsel via ECF, and such documents are available for viewing and downloading from the ECF system:

>Francis A. Weber
>Assistant United States Attorney
>Francis.Weber@usdoj.gov
>US Attorney's Office
>615 Chestnut Street, Suite 1250
>Philadelphia, PA 19106

_____
Alexandre N. Turner